UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASGAARD FUNDING LLC d/b/a THE AASGAARD COMPANY and THE AASGAARD COMPANY, a Texas Partnership, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-1823-B |
| REYNOLDSSTRONG LLC d/b/a BARBELL LOGIC and BARBELL LOGIC ONLINE COACHING, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant ReynoldsStrong LLC's Motion to Disqualify Brodie M. Butland, Esq., Porter, Wright, Morris & Arthur, LLP (Porter Wright), and, by implication, The Law Offices of Joe B. Steimel, P.C. (Steimel) (Doc. 19). For the reasons that follow, the Court **GRANTS** the motion as to Mr. Butland and Porter Wright, but **DENIES** the motion **WITHOUT PREJUDICE** as to Steimel.[1]

## I.
## BACKGROUND

ReynoldsStrong seeks to disqualify Mr. Butland, his law firm Porter Wright, and local counsel Steimel from representing Plaintiffs Asgaard Funding LLC and The Aasgaard Company in this case. This case was originally filed by just Asgaard Funding against ReynoldsStrong, alleging (1) trademark

---

[1] Nothing in this opinion should be construed as evaluating the merits of the underlying action.

- 1 -

infringement in violation of 15 U.S.C. § 1114; (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) trademark dilution in violation of 15 U.S.C. § 1125(c); (4) violation of Texas's Deceptive Trade Practices Act; and (5) breach of contract. Doc. 1, Compl., 42–51.[2] The dispute stems from an alleged breach of a licensing agreement signed by The Aasgaard Company and ReynoldsStrong in November 2016, wherein ReynoldsStrong was granted the right to use Aasgaard's "Starting Strength" trademarks under certain conditions. *Id.* ¶¶ 45–46.

In December 2015, Mark Reynolds, the sole member of ReynoldsStrong, asked Mr. Butland to prepare a liability waiver in connection with ReynoldsStrong's business and a memorandum outlining Missouri's regulation of dietetics. Doc. 19, Def.'s Mot. to Disqualify ("Def.'s Mot."), 2–3; Doc. 25, Pl.'s Opp. to Mot. to Disqualify ("Pl.'s Resp."), 2–3. On January 4, 2016, Mr. Butland sent Mr. Reynolds an engagement letter. Doc. 19, Def.'s Mot., 2–3; Doc. 25, Pl.'s Resp., 3. The scope of the representation included drafting a waiver and release agreement for Mr. Reynolds's business, drafting the Missouri regulation memorandum, and reviewing ReynoldsStrong's documents it had sent to clients for compliance with Missouri law. Doc. 25, Pl.'s Resp., 3. The engagement letter was

---

[2] The Court notes here that Asgaard Funding filed an amended complaint on November 14, 2019, adding The Aasgaard Company as a plaintiff. Doc. 29, First Am. Compl. This was in response to the Court's Electronic Order on October 25, 2019, finding Defendant's Motion to Dismiss moot, and ordering Asgaard Funding to file an amended complaint. *See* Doc. 27, Electronic Order. The amended complaint adds The Aasgaard Company as a plaintiff in order to resolve what would have been a standing issue. The amended complaint is substantively identical to the original complaint, except for the added party, and a description of how The Aasgaard Company transferred its contract and trademark rights to Asgaard Funding. *See* Doc. 29, First Am. Compl., 1–2. Because the complaints are substantively similar, and the parties briefed the issue of disqualification by citing to the original complaint, this Court will cite to the original complaint throughout, unless otherwise noted. As such, the Court will refer to "Asgaard" when discussing the substance of the complaints, as it was Asgaard Funding who filed the original complaint. Additionally, the Court will refer to "Aasgaard" when discussing the licensing agreement, as the licensing agreement was originally executed by The Aasgaard Company and ReynoldsStrong. In its amended complaint, Plaintiffs have dropped the Texas Deceptive Trade Practices Act count. *See generally id.* This fact does not change the Court's decision on this motion.

signed the next day. Doc. 26, Pl.'s App., 64. The letter explained that its terms and conditions would "also apply to any additional legal services outside the initial scope of our representation that you [ReynoldsStrong/Mr. Reynolds] request and that we [Porter Wright] agree to provide." *Id.* at 61. On January 29, 2016, Mr. Butland produced the liability waiver and memorandum. *Id.* at 65–95.

On October 19, 2016, Mark Rippetoe, majority owner of Aasgaard, asked Mr. Butland if he and his law firm could draft "a trademark and web domain license agreement between" Aasgaard and ReynoldsStrong/Mr. Reynolds, in which ReynoldsStrong could use Aasgaard's "Starting Strength" trademarks in connection with its online fitness coaching business. Doc. 25, Pl.'s Resp., 5. On October 24, 2016, Mr. Butland allegedly spoke with both Mr. Rippetoe and Mr. Reynolds to notify the parties that he previously represented Mr. Reynolds in January 2016. *Id.* On the same day, Mr. Butland emailed both parties to memorialize the phone calls. *Id.* at 6. The email confirmed that Mr. Rippetoe had asked Mr. Butland and Porter Wright to draft a licensing agreement between Aasgaard and Mr. Reynolds. Doc. 26, Pl.'s App., 99. The email also confirmed that Mr. Butland had spoken to both parties about a potential conflict "in light of [Mr. Reynold's] former attorney-client relationship with" Mr. Butland, that both parties had no objections, and that Mr. Butland saw no ethical issue in his firm drafting the licensing agreement. *Id.* Mr. Reynolds responded, "No objections here." *Id.*

On the same day that this email was sent (October 24, 2016), Mr. Reynolds emailed Mr. Butland separately to ask him to draft a non-compete agreement for ReynoldsStrong's personnel in connection with its online fitness coaching business. Doc. 19, Def.'s Mot., 3–4; Doc. 25, Pl.'s Resp., 9. Mr. Reynolds attached his own first draft of the agreement. Doc. 19, Def.'s Mot., 4; Doc. 25, Pl.'s Resp., 9. On November 2, Mr. Reynolds asked Mr. Butland for an update on the non-compete

agreement. Doc. 17, Def.'s App., 85. Mr. Butland responded that he had to speak with Porter Wright's ethics counsel to determine whether there was a conflict in drafting the non-compete agreement, as the firm was currently drafting Aasgaard's licensing agreement with ReynoldsStrong. Doc. 19, Def.'s Mot., 5; Doc. 25, Pl.'s Resp., 9–10. Mr. Reynolds responded with a copy of his Starting Strength Online Coaching (SSOC) business plan. Doc. 19, Def.'s Mot., 5.

On November 10, Mr. Butland emailed Mr. Reynolds to explain that there was no conflict because the license agreement and non-compete agreement were "really two different transactions, although they of course relate to a similar subject matter."[3] Doc. 26, Pl.'s App., 127. Mr. Reynolds responded that he "[a]pproved" of the dual representation. *Id.* On November 17, Mr. Butland sent another engagement letter to ReynoldsStrong, that explained that Mr. Butland would "draft a noncompetition agreement for trainers that [Mr. Reynolds was] hiring as part of online strength coaching services." *Id.* at 140.

Two final interactions between Mr. Butland and Mr. Reynolds are notable. First, in January 2018, Mr. Reynolds again asked Mr. Butland for information regarding state dietetics laws. Doc. 19, Def.'s Mot., 7; Doc. 25, Pl.'s Resp., 12 n. 6. There was no formal engagement letter for this communication; although Mr. Reynolds refers to this information as "legal advice," Doc. 19, Def.'s Mot., 7, Mr. Butland believes this was an "informal request" that "took less than 5 minutes to address." Doc. 25, Pl.'s Resp., 12 n. 6. Second, on March 7, 2018, Mr. Reynolds contacted Mr. Butland because Mr. Reynolds suspected that a former employee was violating the non-compete agreement. Doc. 19, Def.'s Mot., 8; Doc. 25, Pl.'s Resp., 12–13. No engagement letter was created

---

[3]The non-compete agreement was for ReynoldsStrong's Starting Strength Online Coaching business, while the licensing agreement is what allowed ReynoldsStrong to use Aasgaard's "Starting Strength" trademarks. Doc. 29, First Am. Compl., ¶ 47.

for this interaction; Mr. Butland alleges this was because of "the urgency of the matter." Doc. 25, Pl.'s Resp., 12–13. Neither party has alleged any further attorney-client-like communications since.

On July 30, 2019, Asgaard Funding LLC filed suit against ReynoldsStrong, with Mr. Butland as one of Asgaard's lawyers. *See* Doc. 1, Compl.; Doc. 6, Electronic Order. ReynoldsStrong subsequently brought this motion (Doc. 19) to disqualify Mr. Butland, Porter Wright, and Steimel (collectively, Counsel). As this issue is fully briefed, the Court addresses Defendant's motion.

## II.

## LEGAL STANDARD

Motions to disqualify are substantive in nature and are thus decided under federal law. *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). "When considering motions to disqualify, courts should first look to the local rules promulgated by the local court itself," *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (citation and quotation marks omitted), although "[l]ocal rules are not the 'sole' authority governing motions to disqualify counsel." *U.S. Fire Ins. Co.*, 50 F.3d at 1312. For example, attorneys practicing in the Northern District of Texas are subject to the Texas Disciplinary Rules of Professional Conduct. *See John Crane Prod. Sols., Inc. v. R2R & D, LLC*, 2012 WL 3453696, at *2 (N.D. Tex. Aug. 14, 2012) (citing N.D. Tex. Civ. R. 83.8(e)). Moreover, the Fifth Circuit recognizes the American Bar Association (ABA)'s Model Rules of Professional Conduct as the "national standards to consider in reviewing motions to disqualify." *In re ProEducation*, 587 F.3d at 299. Therefore, when deciding a motion to disqualify, this Court "consider[s] both the Texas Rules and the Model Rules." *Id.*

All in all, disqualification is a severe sanction. "Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful

consideration." *U.S. Fire Ins. Co.*, 50 F.3d at 1313. Courts must consider the particular facts of each case in the context of the relevant ethical guidelines and with deference to a litigant's rights. *In re ProEducation*, 587 F.3d at 300 (citing *U.S. Fire Ins. Co.*, 50 F.3d at 1314).

## III.

## ANALYSIS

ReynoldsStrong argues that Counsel should be disqualified because ReynoldsStrong is either (1) a current client of Mr. Butland and Porter Wright; or (2) a former client whose interests would be adversely affected by Counsel's representation of Asgaard. Doc. 19, Def.'s Mot., 12–13. Alternatively, ReynoldsStrong believes that there would be an appearance of impropriety that warrants disqualification should Counsel represent Asgaard. *Id.* at 19. Because this Court decides this motion on appearance of impropriety grounds, it does not address the parties' other arguments.

*A.     Whether an Appearance of Impropriety Warrants Mr. Butland's Disqualification*

Because "[t]he rule of disqualification is not mechanically applied in this Circuit," the Court must also consider factors not specifically discussed in the ethical rules. *U.S. Fire Ins. Co.*, 50 F.3d at 1314 (quoting *Church of Scientology v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980)). These factors include "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Id.* (quoting *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992)).

Although all of these factors must be considered, the Fifth Circuit in *U.S. Fire Insurance Company* clarified "that disqualification is unjustified without at least a reasonable possibility that some identifiable impropriety actually occurred." *Id.* at 1316 (citing *Woods v. Covington Cty. Bank*,

537 F.2d 804, 813 (5th Cir. 1976)). This requirement ensures that courts do not "indiscriminately gut[] the right to counsel of one's choice . . . ." *Id.* at 1314 (citing *Woods*, 537 F.2d at 813).

The Court first concludes that there is an appearance of impropriety here. Mr. Butland received what was once potentially confidential information when ReynoldsStrong sent him its business plan, *see* Doc. 28, Def.'s Reply, 8, which included information pertaining to "payouts from pricing to" Aasgaard as well as "the method and frequency of receiving payment" from Aasgaard. Doc. 19, Def.'s Mot., 17. ReynoldsStrong surmises that Mr. Butland might have already used this confidential information when alleging that ReynoldsStrong commingled its revenues and expenses. Doc. 19, Def.'s Mot., 17 (citing Doc. 1, Compl., ¶¶ 56, 58).

Asgaard responds by explaining that ReynoldsStrong's business plan was not confidential because Mr. Reynolds sent Mr. Rippetoe and The Aagaard Company two versions of the same business plan in October 2016. Doc. 25, Pl.'s Br., 22; *see also* Doc. 26, Pl.'s App, 225–26, ¶¶ 7–12. And Asgaard explains that the "commingling" allegation comes not from any of ReynoldsStrong's confidential information, but instead from Mr. Reynolds's email to Aasgaard in which he stated that all of his company's revenues, regardless of the source, were "deposit[ed] into the same bank account." Doc. 25, Pl.'s Br., 23; *see also* Doc. 26, Pl.'s App., 233 (Mr. Reynolds's email).

Regardless of the merit of ReynoldsStrong's belief about the basis of the commingling allegation, Mr. Butland had once-potentially confidential information that could be relevant to a claim in this lawsuit. Mr. Butland's access, therefore, raises the possibility that he used such information to Asgaard's advantage. These circumstances thus appear improper.

Additionally, Mr. Butland was copied on emails between Porter Wright and Aasgaard discussing the licensing agreement at the same time that he was drafting the non-compete agreement

for ReynoldsStrong. Doc. 26, Pl.'s App., 100. And in 2018, Mr. Butland again had, at the very least, a quasi-attorney–client relationship with Mr. Reynolds/ReynoldsStrong. Doc. 19, Def.'s Mot., 7–8; Doc. 25, Pl.'s Resp. 12–13, 12 n.6. In other words, Mr. Butland had access to each parties' work product both while and after his law firm drafted the licensing agreement that would become the heart of this dispute. Mr. Butland admitted that these two transactions involved "similar subject matter." Doc. 26, Pl.'s App., 127.[4] Like his access to the business plan discussed above, Mr. Butland's dual access to related work product raises the possibility that he had the opportunity to use ReynoldsStrong's confidential work product to Asgaard's litigation advantage. This also raises an appearance of impropriety.

Moreover, and most importantly, the Court also concludes that there is "a reasonable possibility that some identifiable impropriety actually occurred." *U.S. Fire Ins. Co.*, 50 F.3d at 1316 (citing *Woods*, 537 F.2d at 813). Specifically, the Court believes that there is a reasonable possibility that there was a violation of Texas Rule 1.09(a)(2) and ABA Rule 1.9(c). "ABA Rule 1.9 is identical to Texas Rule 1.09 in all important respects." *John Crane*, 2012 WL 3453696, at *2 (quotation marks omitted) (quoting *In re Am. Airlines*, 972 F.2d 605, 615 n.2 (5th Cir. 1992)). The Texas rule explains that a lawyer may not conduct a current representation if it might, in reasonable probability, lead to the disclosure of a former client's confidential information. TEX. DISCIPLINARY R. OF PROF'L CONDUCT 1.09(a)(2). Next, ABA Model Rule 1.9 prohibits a lawyer, in a current representation, from "us[ing] information relating to [a former] representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information

---

[4] As explained in footnote 3, the non-compete agreement was for ReynoldsSrong's Starting Strength Online Coaching business, while the licensing agreement is what allowed ReynoldsStrong to use Aasgaard's "Starting Strength" trademarks. Doc. 29, First Am. Compl., ¶ 47.

has become generally known." MODEL RULES OF PROF'L CONDUCT R. 1.9(c)(1) (AM. BAR. ASS'N 2019). The rule also prohibits a lawyer from "reveal[ing] information relating to the representation except as these Rules would permit or require with respect to a client." *Id.* (c)(2). "[T]he moving party must identify the disclosures it made to its former attorney during its former representation and demonstrate that such disclosures are relevant to and jeopardized by its former attorney's current representation of the opposing party." *Hutton v. Parker-Hannifin Corp.*, 2016 WL 4140736, at *6 (S.D. Tex. Aug. 4, 2016) (alterations incorporated) (internal quotations omitted). Conclusory assertions devoid of detail and evidentiary support do not satisfy the test. *See McLean*, 615 F.2d at 692–93; *Ortiz v. Jichasa, LLC*, 2017 WL 8181560, at *3 (W.D. Tex. Apr. 25, 2017), *report and recommendation adopted*, 2017 WL 8161004 (W.D. Tex. May 11, 2017).

In light of Mr. Butland's simultaneous access to both parties' information, and that ReynoldsStrong's business plan includes information about pricing and payouts to The Aasgaard Company, the Court finds that there is a reasonable possibility that Mr. Butland either used or revealed ReynoldsStrong's information during his current representation of Asgaard. *See* MODEL RULES OF PROF'L CONDUCT R. 1.9(c)(1)–(2) (AM. BAR. ASS'N 2019). Even though the pricing information was from at least two-and-a-half years ago, see Doc. 25, Pl.'s Br., 22–23, and the matters might not be substantially related—an issue the Court need not address today—the overlap between the business plan and the subject matter of this case, specifically the breach-of-contract claim, leads the Court to conclude that there is a reasonable possibility confidential information was disclosed to the deteriment of ReynoldsStrong. And, the Court also finds Asgaard's argument that the business plan was disclosed to The Aasgaard Company, Doc. 25, Pl.'s Br., 22, unavailing. Relevant here, ABA

Model Rule 1.9 (c)(1) only allows confidential information to be used "when the information has become generally known . . . ." That has not occurred here.

Additionally, the Court is not satisfied with Asgaard's response to ReynoldsStrong's belief that Mr. Butland used information from his representation of ReynoldsStrong for the "commingling" of ReynoldsStrong's revenues and expenses. Doc. 29, First Am. Compl., ¶¶ 63, 219–22. Again, the information Mr. Butland received from ReynoldsStrong—its payouts and pricing to Aasgaard—are too related to the breach-of-contract claim for the Court to ignore. Just because Mr. Reynolds's email, see Doc. 26, Pl.'s App., 233, is allegedly a basis for the commingling allegation does not mean that it is the *only* basis; there is a reasonable possibility that Mr. Butland used information from his prior representations of ReynoldsStrong to facilitate this claim. ReynoldsStrong has shown how Mr. Butland's current representation of Asgaard is "relevant to and jeopardize[s]" ReynoldsStrong's confidential information. *Hutton*, 2016 WL 4140736, at *6 (quotations omitted).

The multiple appearances of impropriety, coupled with a reasonable possibility that an impropriety occurred, leads this Court to conclude that there is public suspicion that "outweighs any social interests which will be served by [Mr. Butland's] continued participation in the case." *U.S. Fire Ins. Co.*, 50 F.3d at 1314 (quoting *In re Dresser*, 972 F.2d at 544). Thus, the Court must disqualify Mr. Butland.

B.  *Whether the Court Should Disqualify Porter Wright and Steimel*

Next, the Court must determine whether Porter Wright and Steimel should be disqualified. In *In re ProEducation International, Inc.*, the Fifth Circuit cast doubt on whether there is any presumption that confidential information obtained by one attorney of a law firm is shared with other members of his or her law firm. 587 F.3d 296, 304–05 (5th Cir. 2009). However, *In re ProEducation*

involved a "migrating attorney[]" that changed law firms, while Mr. Butland has been at Porter Wright at all relevant periods for this litigation. *Id.* at 304. And in *In re ProEducation*, the attorney opposing imputation provided testimony that he never received confidential information at the former firm where confidential information was shared. *Id.* at 304 n.7. Here, there is no such testimony from the other Porter Right attorney in this case, Mr. Martin Miller. Thus, the general rule that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9" applies to Porter Wright. MODEL RULES OF PROF'L CONDUCT R. 1.10(a) (AM. BAR. ASS'N 2019). Porter Wright must also be disqualified.

The same cannot be said of Steimel, however. Steimel is Plaintiffs' local counsel, while the Porter Wright attorneys on the case were admitted *pro hac vice*. *See* Docs. 5 and 7, Electronic Orders Granting Admission *Pro Hac Vice*. ReynoldsStrong does not allege that Steimel has ever worked at Porter Wright, and does not provide evidence that Steimel ever received confidential information. As such, Steimel is not disqualified.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion (Doc. 19) as to Mr. Butland and Porter Wright, but **DENIES WITHOUT PREJUDICE** the motion as to Steimel. Plaintiffs have until **January 9, 2020** to find new counsel.

**SO ORDERED.**

**SIGNED: December 9, 2019**.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE